[No. D017319. Fourth Dist., Div. One. Dec. 15, 1994.]

FIREMAN'S FUND INSURANCE COMPANY et al., Plaintiffs and Appellants, v.
McDONALD, HECHT & SOLBERG et al., Defendants and Respondents.

## COUNSEL

McNitt, Edwards & Schraner, Robert K. Schraner, Kristen L. White, Quisenberry & Barbanel, Alan H. Barbanel, Stephen D. Treuer and John R. Lisenbery for Plaintiffs and Appellants.

Chandler, Wood, Harrington & Maffly and Donald H. Maffly for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—Plaintiffs Fireman's Fund Insurance Company, General Star Indemnity Company, and North Star Reinsurance Corporation (together Insurers) appeal a judgment of dismissal entered after the superior court sustained without leave to amend the demurrer of defendants McDonald, Hecht & Solberg et al. (together Law Firm)[1] to Insurers' cause of action in subrogation for legal malpractice. Seeking reversal of their dismissal as plaintiffs in this lawsuit, Insurers contend the court erred in concluding California law prohibited prosecution of a legal malpractice cause of action by a subrogee. We affirm the judgment.

---

[1]After the appellate record was filed, all plaintiffs asked the superior court to dismiss from the lawsuit various parties named as defendants in the second amended complaint. In their letter bringing such request to our attention, plaintiffs have indicated the issues on appeal no longer affect those defendants/respondents. Accordingly, the appeal is dismissed with regard to those parties. (Cal. Rules of Court, rule 19(b).) The remaining defendants/respondents are McDonald, Hecht & Solberg; Alex C. McDonald; and Alex C. McDonald, a professional corporation.

# I

## INTRODUCTION

Insurers paid more than $10 million to settle a lawsuit against their developer insureds by homeowners alleging misrepresentations in the sales of residential units. The insureds then filed a legal malpractice case against their attorneys (Law Firm) for causing those misrepresentations to be made. Later, Insurers joined the malpractice lawsuit as plaintiffs under a theory of subrogation. Law Firm successfully demurred on the ground California law prohibiting assignment of legal malpractice actions also precluded Insurers from proceeding as subrogees to their insureds' claim against Law Firm. The court entered judgment dismissing Insurers as plaintiffs.

Insurers contend the superior court improperly extended the doctrine of the nonassignability of legal malpractice claims to a subrogation situation where public policy considerations ordinarily warranting application of the doctrine were assertedly not present. We conclude the superior court properly determined settled law barred Insurers from proceeding against Law Firm on a theory of subrogation.

# II

## FACTS

For purposes of determining the propriety of the order sustaining Law Firm's demurrer, we accept as true the facts alleged by Insurers in the second amended complaint. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].)

Insurers issued comprehensive general liability policies to Pacific Scene, Inc., its successor Sundance Financial, Inc., and joint venture Treetops Unlimited (together Insureds).

In 1980 Pacific Scene retained Law Firm to provide legal services in connection with the development and sale of the Hillsborough planned development. Law Firm advised Pacific Scene about disclosures to be made to prospective buyers of Hillsborough units. Law Firm also prepared for filing with state regulators or distribution to prospective buyers legal documents containing disclosures, warranties and representations about Hillsborough units.

In September 1988 various Hillsborough homeowners associations filed a lawsuit (Homeowners action) against Insureds alleging misrepresentation of

numerous facts to Hillsborough owners. Law Firm was not a party to the Homeowners action.

In November 1990 Law Firm ceased representing Insureds.

Eventually, the Homeowners action was settled. Law Firm declined an invitation to participate in the settlement negotiations.

In June 1991—because the claims made against Insureds in the Homeowners action implicated the potential for coverage arising under the liability policies Insurers had issued to Insureds—settlement payments were made by Fireman's Fund ($4,762,616.56), North Star ($4,031,772.75), and General Star ($1,343,927.25).[2] Insurers' payment of settlement and defense costs in the Homeowners action depleted Insureds' insurance coverage, depriving Insureds of insurance coverage for other claims asserted against them. Under the settlement, Insureds were to replenish the limits of their insurance policies with items recovered in their contemplated lawsuit against Law Firm.

## III

### SUPERIOR COURT PROCEEDINGS

### A

### *Plaintiffs' Pleadings*

In October 1991 Insureds sued Law Firm for legal malpractice.

In April 1992 a second amended complaint was filed adding Insurers as plaintiffs on a subrogation cause of action against Law Firm. The second amended complaint alleged Law Firm's negligence in performing legal services for Insureds involving the Hillsborough development caused the misrepresentations alleged in the Homeowners action. Under the second amended complaint, Insureds sought recovery from Law Firm for all sums Insureds became legally obligated to pay under the settlement of the Homeowners action, whether paid directly by Insureds or on their behalf by Insurers. Alleging in making the settlement payments Insurers acted in compliance with the terms of the insurance policies and California insurance law, Insurers sought to recover those settlement sums from Law Firm. Insurers alleged entitlement to such recovery to the extent the court found

---

[2]Insureds also paid $510,000 under the settlement.

Insureds' cause of action for legal malpractice against Law Firm transferred to Insurers by subrogation as a matter of law by virtue of Insurers making settlement payments on Insureds' behalf.

## B

### *Law Firm's Demurrer to Second Amended Complaint*

Law Firm demurred to Insurers' subrogation cause of action on the ground it failed to allege facts sufficient to state a cause of action "in that as a matter of public policy a legal malpractice claim is nonassignable and plaintiff insurers may not be subrogated to that nonassignable claim." After hearing, the superior court sustained without leave to amend Law Firm's demurrer to Insurers' subrogation cause of action. In sustaining Law Firm's demurrer, the court stated: "The law is well settled that a cause of action personal to the assignor, cannot be assigned. Legal malpractice actions have traditionally been held to be such causes of action. [Citations.] A subrogation clause in an insurance contract is an implied assignment and subject to this restriction. [Citations.] Therefore the insurers cannot directly complain of the defendants for legal malpractice."[3]

The court entered judgment dismissing Insurers as plaintiffs.

Insurers appeal.

## IV

### DISCUSSION

#### A

In noting the law was "well settled" that a legal malpractice action is personal to the plaintiff and cannot be assigned, the superior court relied on *Jackson* v. *Rogers & Wells* (1989) 210 Cal.App.3d 336 [258 Cal.Rptr. 454] and *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83]. In concluding subrogation was an implied assignment and thus subject

---

[3]The superior court also overruled a demurrer by Law Firm to Insureds' cause of action for legal malpractice. However, the court struck the portions of that cause of action where Insureds sought recovery of sums Insurers paid on Insureds' behalf. The court also struck Insureds' allegations seeking damages for depletion of their insurance coverage. Thus, the court permitted Insureds to proceed only insofar as they sought to recover their out-of-pocket losses. As we shall later explain, we do not reach the issue of the propriety of the order striking portions of Insureds' pleading.

to the prohibition against assigning legal malpractice actions, the court cited *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813] and *Peller* v. *Liberty Mut. Fire Ins. Co.* (1963) 220 Cal.App.2d 610 [34 Cal.Rptr. 41].

In *Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d 389, the appellate court stated: "It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke the public policy considerations in our conclusion that malpractice claims should not be subject to assignment." (*Id.* at p. 397; accord, *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at pp. 342-343.)

In *Kracht* v. *Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019 [268 Cal.Rptr. 637], we stated: "*Goodley* and *Jackson* noted that because of the uniquely personal nature of the relationship, numerous public policy considerations were involved in determining whether claims for legal malpractice should be assignable. *Goodley* noted the attorney owes a duty of undivided loyalty and diligence in representing the client. Such duty is personally owed by the attorney and may not be delegated to others, and is owed solely to the client, his one intended beneficiary. Assignability would encourage commercialization of claims, and would force attorneys to defend themselves against persons to whom no duty was ever owed. Moreover, the legal profession is debased by such commercialization, because it could (1) encourage unjustified lawsuits; (2) generate increased malpractice lawsuits, burdening the profession, the court system and (to the extent malpractice premiums would inevitably rise and be passed to the consumers) the public; and (3) promote champerty. [Citation.] Assignability could conceivably reduce the public's access to legal services, since the ever present threat of assignment by irresponsible clients (seeking quick financial gain) could cause lawyers to evaluate more selectively the desirability of representing a particular client. [Citation.]" (*Kracht* v. *Perrin, Gartland & Doyle, supra,* at pp. 1023-1024.)

In *Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632, the Supreme Court concluded although "subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such causes of action by subrogation." (*Id.* at p. 640.)

Based upon those cases, the superior court concluded Insurers were prohibited from asserting as subrogees a legal malpractice claim against Law Firm to recover the settlement payments Insurers made on Insureds' behalf in the Homeowners action.

B

Although acknowledging the existence of case law holding that legal malpractice claims are generally not assignable and nonassignable claims are not subject to subrogation absent statutory authorization, Insurers contend the public policies articulated in those cases to restrict the assignability of legal malpractice claims are not applicable to a subrogation claim by a liability insurer who paid a claim against its insured client resulting from the insured's attorney's negligence. Insurers seek to distinguish those cases factually as not involving a subrogee insurer whose interests were directly affected by its subrogor's attorney's malpractice and whose interests were "aligned" or "virtually identical" with (and indeed "derivative" of) the insured's interests against the attorney.[4] Characterizing the superior court's ruling as inequitable in light of other public policies favoring reasonable settlements, encouraging liability carriers to meet their insureds' reasonable expectations, transferring risks to actual tortfeasors, and spreading loss among cotortfeasors, Insurers assert those public policies require that their lawsuit as subrogees be permitted and the holding in *Fifield Manor* v. *Finston*, supra, 54 Cal.2d 632, not be extended to apply here.[5] Although Insurers' public policy arguments have substance, we are not the proper tribunal to depart from established law.

---

[4]Insurers note *Goodley* v. *Wank & Wank, Inc.*, supra, 62 Cal.App.3d 389, involved an assignment of a legal malpractice claim to a party with no connection to the client, while here Insurers had a preexisting contractual relationship with Insureds and sought only to recoup moneys they were obligated to pay on Insureds' behalf. Insurers cite Civil Code section 2860, subdivision (d), as indicating a liability insurer may in some instances participate in privileged communications between the insured and the insured's counsel. Insurers also note the transfer by subrogation here was not a market transaction potentially converting Insureds' claim into an exploitable economic commodity involving a discounted sales price or "factoring" of such claim. (*Goodley* v. *Wank & Wank, Inc.*, supra, at pp. 397-398.) Insurers further note *Kracht* v. *Perrin, Gartland & Doyle*, supra, 219 Cal.App.3d 1019, and *Jackson* v. *Rogers & Wells*, supra, 210 Cal.App.3d 336, involved assignments of legal malpractice claims to parties who were the insured clients' adversaries in underlying lawsuits, a situation "fraught with illogic" not present here. (*Id.* at p. 348.) Additionally, Insurers note unlike the situation in *Kracht* v. *Perrin, Gartland & Doyle*, supra, where the insured client was satisfied with the attorney's services, Insureds here filed their own malpractice suit against Law Firm. (219 Cal.App.3d at p. 1024.) Finally, Insurers note none of those cases involved subrogation claims by liability insurers. Thus, according to Insurers, those cases do not prevent assignment of a legal malpractice claim to a party who has discharged the attorney's client's obligation created by the attorney's malpractice.

[5]Insurers describe the superior court's decision as constituting an "unwarranted extension of the rule against assignment of legal malpractice claims to the equitable transfer of a claim by way of subrogation."

## C

"In 1872 our Legislature effected a change in the common law rule of nonassignability of choses in action by enacting sections 953 and 954, Civil Code. Thus a thing in action arising out of either the violation of a right of property or an obligation or contract may be transferred [citations]. ■ The construction and application of the broad rule of assignability have developed a complex pattern of case law underlying which is the basic public policy that ' "[a]ssignability of things in action is now the rule; nonassignability the exception" ' [citations]. ' "[A]nd this exception is confined to wrongs done to the person, the reputation, of the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage." ' [Citation.] Thus, causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputation or the feelings of the one injured. Assignable are choses in action arising out of an obligation or breach of contract as are those arising out of the violation of a right of property (§ 954, Civ. Code) or a wrong involving injury to personal or real property." (*Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d at pp. 393-394, fns. omitted; accord, *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at pp. 341-342.)[6]

■ "It is now well settled that under California law a former client may not voluntarily assign his claims for legal malpractice against his former attorneys. In *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83], and more recently in *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d p. 336, the courts determined that although choses in action for property or pecuniary losses are generally assignable, a claim for legal malpractice is more akin to those types of claims which are *not* assignable, i.e., claims for personal injury, wrongs of a purely personal nature (such as injuries to the reputation or feelings of the injured party) or breaches of contracts of a purely personal nature (such as promises of marriage). [Citations.] *Goodley* and *Jackson* concluded that the attorney-client relationship (although containing contractual elements) is unique and involves a highly personal and confidential relationship, making the relationship '. . . more analogous to a contract of a personal nature than to an ordinary commercial

---

[6]All statutory references are to the Civil Code unless otherwise specified.

Section 953 provides: "A thing in action is a right to recover money or other personal property by a judicial proceeding."

Section 954 provides: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

contract' [citation], and rendering claims for negligent breach thereof non-assignable." (*Kracht* v. *Perrin, Gartland & Doyle, supra*, 219 Cal.App.3d at p. 1023, italics in original.)[7]

In *Fifield Manor* v. *Finston, supra*, 54 Cal.2d 632, the Supreme Court considered the question "whether a third party may be subrogated either by the operation of equitable principles (legal subrogation) or by contract with the injured party (conventional subrogation) to any part of a cause of action for injury to the person in view of the fact that under our law no such cause of action may be assigned." (*Id.* at p. 639.)[8] The court concluded "the principles of subrogation should not be here applied in view of the express reservation against assignment in Civil Code, section 956." (*Fifield Manor* v. *Finston, supra*, at p. 643.)[9] The court stated: "Whether the transfer be technically called assignment or subrogation or equitable assignment or assignment by operation of law its ultimate effect is the same, to pass the title to a cause of action from one person to another." (*Id.* at p. 640.)[10] The court also noted the plaintiff had not identified any California case "where a right of subrogation to a cause of action for tortious injury to the person has

---

[7]In *Jackson* v. *Rogers & Wells, supra*, 210 Cal.App.3d 336, we noted "the hybrid contract-tort nature" of claims for legal malpractice. (*Id.* at p. 342.)

[8]In *Fifield Manor* v. *Finston, supra*, 54 Cal.2d 632, the plaintiff provided medical care to Ross under a life-care contract. Ross was injured and died as a result of an automobile accident allegedly caused by the negligence of defendants. The superior court sustained without leave to amend defendants' demurrer to plaintiff's lawsuit to recover the cost of care it rendered to Ross. (*Id.* at p. 634.) The Supreme Court affirmed the judgment of dismissal.

[9]Former Civil Code section 956 provided: " 'A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action. When the person entitled to maintain such an action dies before judgment, the damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and shall not include damages for pain, suffering or disfigurement, nor punitive or exemplary damages, nor prospective profits or earnings after the date of death. The damages recovered shall form part of the estate of the deceased. Nothing in this article shall be construed as making such a thing in action assignable.' " (*Fifield Manor* v. *Finston, supra*, 54 Cal.2d at p. 638, fn. 1.)

Following *Fifield Manor* v. *Finston, supra*, 54 Cal.2d 632, the court in *Peller* v. *Liberty Mut. Fire Ins. Co., supra*, 220 Cal.App.2d 610, noted "the Legislature has approved the common law rule against assignment of choses in action based upon injury to the person." (*Id.* at p. 612.)

[10]In *Allianz Insurance Co.* v. *Municipal Court* (1981) 126 Cal.App.3d 1043 [179 Cal.Rptr. 334], the appellate court noted: "The courts have consistently held that subrogation operates as an equitable assignment. [Citations.]" (*Id.* at p. 1046.)

been recognized, except in cases where such right of subrogation has been expressly granted by statute." (*Id.* at p. 639.)[11]

However forceful we may deem the equities supporting Insurers' contentions that various public policy concerns underlying the rule of nonassignability of legal malpractice claims are inapplicable where, as here, a liability insurer seeks to recoup from its insured's negligent attorney payments made by the insurer on the insured's behalf, we cannot depart from settled law. As noted, California courts have consistently held legal malpractice claims are nonassignable to protect the integrity of the uniquely personal and confidential attorney-client relationship. (*Kracht* v. *Perrin, Gartland & Doyle, supra,* 219 Cal.App.3d at pp. 1022-1026; *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at p. 342; *Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d at p. 397.)[12] Further, under principles of stare decisis we are bound to follow the Supreme Court's holding in *Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632, that absent express statutory authorization nonassignable claims are not subject to subrogation. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## D

In sum, under well settled law, Law Firm owed its client (Insureds) a "duty of undivided loyalty and diligence." (*Kracht* v. *Perrin, Gartland & Doyle, supra,* 219 Cal.App.3d at p. 1023.) Such duty was owed "solely" to Insureds, the intended beneficiary. (*Ibid.*) Insurers were not clients of Law Firm. Neither were Insurers intended beneficiaries of Law Firm's performance of legal services. (*Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d at p. 396.) "Because of the inherent character of the attorney-client relationship, it has been jealously guarded and restricted to only the parties involved." (*Ibid.*) Assignability would imperil the "sanctity" of that

---

[11]In *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506 [64 Cal.Rptr. 187], the appellate court noted one element of an insurer's cause of action based on equitable subrogation was that ". . . the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer . . . ." (*Id.* at p. 509.) The court also noted "as in cases of assignment, the equitable subrogee is substituted only in respect of a subrogor's causes of action which are not purely personal . . . ." (*Id.* at p. 510.)

[12]In *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d 336, we noted "the *Goodley* decision has not been disapproved, overruled, or disagreed with by other California courts nor has the Legislature seen fit since 1976, when the opinion was issued, to specifically authorize the assignment of legal malpractice causes of action." (*Id.* at p. 344, fn. omitted.)

"Since the Legislature has recognized the common law rule against the assignability of causes of action arising out of personal injuries, any change in the rule must be by legislative action." (*Peller* v. *Liberty Mut. Fire Ins. Co., supra,* 220 Cal.App.2d at p. 612.)

relationship. (*Kracht* v. *Perrin, Gartland & Doyle, supra,* at p. 1024.) "The public policy concerns expressed in *Jackson* and *Goodley* are violated by *any* assignment of claims, whether voluntary or (as here) involuntary." (*Ibid.,* italics in original.) "Differences between lawyer and client respecting malpractice should be limited to themselves." (*Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12, 22 [183 Cal.Rptr. 609].)[13]

Further, California courts have uniformly held nonassignable claims are not subject to subrogation absent express statutory authorization. (*Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632; *Allianz Insurance Co.* v. *Municipal Court, supra,* 126 Cal.App.3d 1043; *Patent Scaffolding Co.* v. *William Simpson Constr. Co., supra,* 256 Cal.App.2d 506.) No statute expressly authorizes subrogation of legal malpractice claims. Hence, as legal malpractice claims are nonassignable, such claims may not be subrogated. Thus, case law compels a holding Insureds' legal malpractice cause of action is not assignable to Insurers.[14]

E

1

Without merit is Insurers' contention the concerns expressed in *Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d 389, about the personal nature of legal services and the confidential attorney-client relationship have been undercut by the holding in *Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1 [4 Cal.Rptr.2d 87], where the court assertedly focused on the "economic" rather than the "personal" nature of the attorney-client relationship in denying a client the right to seek emotional distress damages against the attorney. (*Id.* at p. 10.) *Merenda* referred to "economic" interest, not in describing the attorney-client relationship itself, but instead when discussing the client's interest—with respect to a third party—sought to be protected by the attorney-client relationship. (*Ibid.*) We find nothing in *Merenda* suggesting the attorney-client relationship is other than personal and confidential simply because the lawyer was retained to assert against a third party a claim made in the client's economic interest.

---

[13]The "sacred attributes of complete confidentiality and undivided loyalty . . . are the heart of the relationship between lawyer and client." (*Goldfisher* v. *Superior Court, supra,* 133 Cal.App.3d at p. 22.)

[14]Even if we were to accept the truth of Insurers' assertion their interests were necessarily aligned with those of Insureds, the result would not differ. In *Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632, the interests of the personal injury victim and the medical insurer were effectively "aligned" against the third party tortfeasor yet the Supreme Court declined to permit a lawsuit under a theory of subrogation.

2

Insurers seek to distinguish *Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632, as based on former section 956's last sentence, construed by Insurers as precluding assignment of personal injury causes of action. However, Insurers misapprehend the import of that portion of former section 956. "Historically at common law the assignability of causes of action sounding in tort depended upon survivability. So causes of action for damage to property, since they survived the death of the parties, were assignable and causes of action for injury to the person, since they did not survive, were not assignable. [Citations.]" (*Fifield Manor* v. *Finston, supra,* at p. 638.) Former section 956 was enacted to provide for the survivability of certain personal injury claims. The last sentence of that statute simply reaffirmed the common law rule that such claims—though now surviving—remained nonassignable. (*Peller* v. *Liberty Mut. Fire Ins. Co., supra,* 220 Cal.App.2d at p. 612.) "By adopting this reservation against assignability, the Legislature placed the law as regards the causes of action [provided for in section 956] in the same position as all other causes of action arising from tortious injury to the person." (*Fifield Manor* v. *Finston, supra,* at p. 639.)

3

Insurers cite *Employers Ins.* v. *Musick, Peeler & Garrett* (9th Cir. 1992) 954 F.2d 575, where the court permitted subrogation of liability insurers to the insured's claim for contribution against the insured's attorneys. (*Id.* at pp. 577-578.) However, Insurers' reliance on *Employers Ins.* is inapposite since that case involved federal statutory law, a matter not pertinent here.

4

Insurers meritlessly contend in *Kirtland & Packard* v. *Superior Court* (1976) 59 Cal.App.3d 140 [131 Cal.Rptr. 418] the appellate court implicitly recognized an insurer ordinarily had a right of subrogation to its insured's legal malpractice claim against the insured's attorney. The court did not state there was a validly existing right of subrogation but instead simply noted the real party in interest conceded "the insurance company is not dissatisfied with the outcome of [the underlying medical malpractice case] and has waived any rights of subrogation it *might* have had." (*Id.* at p. 145, fn. 3, italics added.) Moreover, it appears the insurer in *Kirtland & Packard* v. *Superior Court* could have asserted a direct cause of action for legal malpractice as the employer and client of the defense attorney.

5

Finally, without merit is Insurers' contention there is or should be an exception to the rule against subrogation of a nonassignable claim to permit

an insurer to assert a subrogation claim for equitable indemnification or contribution against an attorney liable to the insured/client.

Insurers contend the rule against subrogation of nonassignable claims should not apply to claims for indemnity or contribution against parties equitably responsible to the insured. Insurers seek to analogize this case to *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914], where the Supreme Court held an employer's insurer who paid a judgment against the employer for injuries caused by an employee's unauthorized negligent act was subrogated to the employer's recoupment cause of action against the employee or the employee's insurer. (*Id.* at p. 429.) Insurers contend Insureds here were in the position of the employer in *Continental Cas. Co.* whose insurer had to pay for the misfeasance of the employer's agent/employee attorneys; and, having drafted various documents leading to Insureds' liability in the Homeowners action, Law Firm here was in the same position as the ultimately responsible agent in *Continental Cas. Co.* In discussing *Continental Cas. Co.*, the Supreme Court in *Fifield Manor* v. *Finston, supra,* 54 Cal.2d 632, stated: "The employer's cause of action against the employee in such circumstances is based upon the breach of the servant's duty to his master and is one for indemnification [citations], and the holding in Continental Casualty does not impinge in any way upon the question now before us." (*Fifield Manor* v. *Finston, supra,* at pp. 642-643.) Thus, according to Insurers, the court in *Fifield* distinguished the situation where an insurer was subrogated to its insured's claim for indemnification against another responsible party and hence similar principles should allow Insurers to be subrogated to Insureds' claim for contribution or indemnity against joint tortfeasor Law Firm. We disagree.

Insurers characterize Insureds' claim against cotortfeasor Law Firm as essentially for indemnification based upon (1) general indemnity principles (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97]); (2) Insureds' special relationship with Law Firm (*City & County of S.F.* v. *Ho Sing* (1958) 51 Cal.2d 127, 130 [330 P.2d 802]); or (3) Law Firm's concurrent duty of care owed directly to Homeowners (*Courtney* v. *Waring* (1987) 191 Cal.App.3d 1434, 1443-1444 [237 Cal.Rptr. 233]; *Cicone* v. *URS Corp.* (1986) 183 Cal.App.3d 194, 209 [227 Cal.Rptr. 887]; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 110-111 [128 Cal.Rptr. 901]). However, regardless whether styled as a claim for subrogation, indemnity or contribution, the gravamen of Insurers' claim was legal malpractice as Insureds' actionable injury was allegedly the result of Law Firm's professional negligence. (*Kracht* v.

*Perrin, Gartland & Doyle, supra,* 219 Cal.App.3d at pp. 1022-1023.) Accordingly, Insurers' cause of action was barred by the rule against assignment of legal malpractice claims. (*Ibid.*; accord, *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at pp. 344-350.)[15]

### F

In sum, we may not depart from well settled law prohibiting assignment or subrogation of legal malpractice claims absent express statutory authorization. Since the rule prohibiting assignment or subrogation of such claims has not been modified by the Legislature or the Supreme Court, Insurers as subrogees may not pursue this lawsuit against Law Firm.

The superior court properly sustained Law Firm's demurrer without leave to amend and entered judgment dismissing Insurers as plaintiffs in this lawsuit.[16]

### DISPOSITION

The judgment is affirmed.

Benke, J., and Nares, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 16, 1995.

---

[15]Misplaced is Insurers' reliance on the rule allowing an insurer to be subrogated to a vicariously liable employer's cause of action against an employee for recoupment. (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423.) The situation here is factually distinguishable as Law Firm was not Insureds' employee and, moreover, in the Homeowners action liability was imposed on Insureds not vicariously under the doctrine of respondeat superior but instead for Insureds' own conduct.

We also note Insureds here did not have any contribution rights against Law Firm to which Insurers could be subrogated. Law Firm was not a joint judgment debtor and thus contribution was unavailable under California law. (Code Civ. Proc., § 875, subd. (a).)

[16]We do not reach appellant Fireman's Fund's contention the superior court erred in concluding Insureds may not seek recovery of insurance proceeds paid on their behalf. The order granting Law Firm's motion to strike portions of Insureds' damage allegations was an interlocutory, nonappealable ruling. Although Fireman's Fund maintains we should address such assertedly procedurally and substantively erroneous ruling at this time to avoid injustice and unnecessary waste of judicial resources, we decline to do so. The matter is not properly before us since Insureds are not parties to this appeal and apparently continue to pursue the remainder of their damage claims in superior court.