Filed 12/19/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURA LAZAR,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LYNETTE BISHOP et al.,<br><br>    Defendants and<br>Respondents. | B321752<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV17351) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Reversed with directions.

Law Office of Robert S. Gerstein, Robert S. Gerstein; Morris S. Getzels Law Office, and Morris S. Getzels for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Frederic W. Trester, Steven J. Renick, and Antoinette M. Marino for Defendants and Respondents.

Brian A. Manson, Neil Kalin, and Joseph Yoon for California Association of Realtors as Amicus Curiae in support of Defendants and Respondents.

───────────────

Laura Lazar (plaintiff) sued real estate brokers Lynette Bishop, Shen Shulz, Sotheby's International Realty, Inc. (Sotheby's), and Shen Realty, Inc. (collectively, defendants) for breach of the fiduciary duty defendants owed to plaintiff's father in connection with the sale of his Malibu house (the house). The complaint alleged that plaintiff's father assigned plaintiff his causes of action arising from the listing and sale of the house. The trial court granted defendants' motion for summary judgment, concluding plaintiff lacked standing to sue because the cause of action for breach of fiduciary duty was not assignable under Civil Code section 954.[1]

Plaintiff appeals from the judgment entered in favor of defendants and urges us to find her sole cause of action assignable. As a matter of first impression, we hold that plaintiff's cause of action for breach of the real estate brokers' fiduciary duties, which seeks only damages related to property rights and pecuniary interests, is assignable. We reverse the grant of summary judgment and remand for the trial court to consider the remaining grounds argued in defendants' motion.

───────────────────────────

[1] All undesignated statutory references are to the Civil Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

## I.    Sale of the House

In 2006, Daniel Gottlieb purchased the house for $3,452,500. Gottlieb's daughter, plaintiff, subsequently lived there. In November 2016, Gottlieb engaged Bishop, a Sotheby's real estate agent, to sell the house. Bishop listed the house for sale for $4.2 million. Thereafter, Bishop persuaded Gottlieb to drop the listing price to $3,995,000, and then to $3,150,000, the price at which William and Stephanie Spalding bought the house. Allegedly unbeknownst to Gottlieb, the Spaldings' broker, Shen Shulz, was also a Sotheby's agent.

## II.    The Lawsuit

In May 2019, plaintiff sued defendants, alleging a single cause of action for breach of fiduciary duty. The complaint stated that Gottlieb had assigned all of his rights and causes of action arising from the listing and sale of the house to plaintiff. The complaint alleged that per the listing agreement, Bishop owed Gottlieb a fiduciary duty "to make the fullest disclosure of all material facts that might affect [Gottlieb's] interest, and owed to [Gottlieb] a fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with" Gottlieb. This duty included placing Gottlieb "on notice if any realtor involved in the sale of [the house] was a dual agent, i.e. working for both the buyer and the seller," obtaining Gottlieb's consent to any dual agency, not disclosing to the buyer's agent that Gottlieb would accept less than the asking price, and attempting to sell the house at the highest possible price.

The complaint alleged that neither Bishop nor Schulz informed Gottlieb that there was a dual agency until Gottlieb was

3

already in a binding sale contract with the Spaldings. Plaintiff further alleged that Bishop breached her fiduciary duty by not working to obtain the highest possible sale price, failing to market the property to make it competitive, and coaxing Gottlieb to twice lower the listing price. The complaint stated that Bishop informed Schulz that Gottlieb "would lower the price and that [Gottlieb] would sign whatever document Defendant Bishop wanted him to sign and told him to sign." Plaintiff alleged that the house would have sold for more than the $3,150,000 that the Spaldings paid, and closer to $5,200,000, had the fiduciary duty not been breached. Plaintiff sought the following damages: $157,500, the amount of commission that defendants were paid in the house sale; $2,050,000, the amount greater than the sale price that would have been paid had defendants not allegedly breached their fiduciary duty (based on the home's alleged true value at the time of the sale); $12,954, the amount spent preparing the house for sale; and interest on the damages and the costs of suit incurred by plaintiff.

### III. Motion for Summary Judgment

In July 2019, defendants answered the complaint. In February 2021, defendants moved for summary judgment. Defendants' central contention was that plaintiff lacked standing to bring suit because "a chose in action for breach of fiduciary duty against a real estate broker/agent is not assignable."[2]

---

[2] According to Black's Law Dictionary, a "chose in action" is "1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but

4

Defendants argued that breach of the fiduciary duty against a real estate broker was a highly personalized right of recovery that could not be assigned. Noting that the assignability of a claim for breach of fiduciary duty against a real estate broker had not been addressed by case law, defendants likened the cause of action to a legal malpractice claim, which is generally unassignable. Defendants also argued that Gottlieb lacked capacity to assign the chose in action and that plaintiff could not prove defendants breached a fiduciary duty.[3]

Plaintiff opposed summary judgment, in part arguing that the cause of action for breach of fiduciary duty was assignable pursuant to sections 953 and 954. She argued the cases cited by defendants were not applicable and that the relationship between a real estate broker and client was not analogous to the attorney-client relationship.

The trial court granted summary judgment, concluding that plaintiff lacked standing. The court found:

"The nature of the relationship between the principal and the real estate licensee is indeed analogous to that of the relationship between an attorney and client. This relationship includes the highest level of good faith, undivided service and loyalty, the duty to investigate, learn, and counsel and advise the

---

another person possesses, the owner being able to regain possession through a lawsuit." (Black's Law Dict. (12th ed. 2024.) p. 304.)

[3] We do not go into the details of these two arguments as the trial court granted summary judgment based on plaintiff's lack of standing and did not consider the other grounds, and the parties do not argue these grounds on appeal.

client, to disclose reasonably obtainable information, and not put his or her interests ahead of the client. As in the case of attorneys, the nature of the relationship distinguishes itself from the typical assignment of a collection case, for example, where parties have engaged in arms-length transactions.

"Additionally, the same policy considerations would apply to the assignment of lawsuits against real estate licensees, including the commercialization of claims, the need to defend against claims brought by parties with whom they had no prior relationship, encouragement of unjustified lawsuits, an increase in the number of lawsuits, burdening of the profession and the court system, and creation of barriers to access to real estate licensees through increased malpractice premiums and the concomitant effect on the cost of services and property sales.

"The Court is convinced that an action for breach of fiduciary duty against a real estate licensee is not assignable." Because the court concluded plaintiff lacked standing, it did not address the remaining grounds for summary judgment.

Plaintiff filed a motion for reconsideration of the court's ruling on the summary judgment motion, which the trial court denied. The trial court then granted defendants' motion for $148,211 in attorney fees. In February 2022, the court entered judgment against plaintiff and in favor of defendants. In May 2022, plaintiff moved for a new trial, which the trial court denied. Plaintiff appealed.

## DISCUSSION

This appeal presents a matter of first impression: whether the cause of action for a breach of a real estate broker's fiduciary duty is assignable. Plaintiff argues we should reverse the granting of summary judgment because the claim is assignable

6

and she thus has standing.  As we explain below, we agree that the cause of action for breach of a real estate broker's fiduciary duty is assignable when it seeks damages solely related to property and pecuniary interests.[4]

Before we discuss the substantive issues, we first address the timeliness of plaintiff's appeal.

## I. Plaintiff's Notice of Appeal Was Timely Filed

On June 8, 2022, plaintiff's counsel electronically submitted a notice of appeal and it was received on that date by the superior court.  On June 13, 2022, plaintiff's counsel was notified by the clerk that the notice of appeal was rejected because of counsel's failure to use the proper category in the dropdown menu for the electronic filing.  Plaintiff resubmitted the notice of appeal on June 13, 2022.  The trial court then dated the notice of appeal as having been filed on June 13, 2022.

On August 10, 2022, we sent the parties a letter asking plaintiff to demonstrate in writing why her appeal should not be dismissed as having been untimely filed because the notice of appeal was dated June 13, 2022, four days after the June 9, 2022 filing deadline.  The parties briefed the issue, and we deferred ruling on the issue until now.  Plaintiff argued that her notice of appeal was rejected for a technical reason and should be deemed timely filed.  Defendants argued "the untimely filing is 'not

---

[4]      On August 2, 2024, California Association of Realtors requested permission to file and lodged with this court an amicus brief in support of defendants.  We now grant California Association of Realtors permission to file the brief and have considered its arguments, which largely echo those made by defendants.

7

remediable' " since it was not caused by a technical problem with the filing system but rather by counsel's mistake.

After reviewing the exhibits filed by plaintiff showing the facts explained above, we deem plaintiff's notice of appeal timely filed. It appears plaintiff submitted the notice of appeal to the superior court before the filing deadline, the superior court rejected it due to a technical issue with the electronic filing, and plaintiff's counsel promptly refiled the notice of appeal the same day counsel received the superior court's rejection of the original filing. (See *Garg v. Garg* (2022) 82 Cal.App.5th 1036, 1042 [notice of appeal may be deemed timely when appellant attempted to electronically file the document prior to the expiration of the deadline and then showed diligence in promptly filing the notice of appeal after the failed attempt]; see also *Pangilinan v. Palisoc* (2014) 227 Cal.App.4th 765, 769–770 [appeal deemed timely where the notice of appeal delivered to the clerk's office within the requisite period but rejected by the clerk because of a problem with the filing fee]; *Rapp v. Golden Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167, 1172 [presentation of the notice of appeal to the clerk within the requisite period rendered it timely despite the error regarding the filing fee].) We therefore turn to the merits of the appeal.

## II.     Standard of Review

Summary judgment is designed to cut through the parties' pleadings to determine whether trial is necessary to resolve the dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A motion for summary judgment shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) On

8

appeal from a summary judgment, we review the record de novo to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) We likewise review de novo the issue of whether plaintiff has standing to pursue her claims. (*Loeber v. Lakeside Joint School District* (2024) 103 Cal.App.5th 552, 570 ["Standing is a question of law that courts typically review de novo."].)

## III.  Applicable Law
### a.  Standing

"The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant." (*Payne v. United California Bank* (1972) 23 Cal.App.3d 850, 859.) Under Code of Civil Procedure section 367, "[e]very action must be prosecuted in the name of the real party in interest." "[T]he real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain the cause of action"—"the owner of the cause of action." (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 147–148.) "An assignee of an assignable chose in action has taken legal title and 'may sue in his or her own name.' [Citations.] Any assignment 'merely transfers the interest of the assignor. The assignee "stands in the shoes" of the assignor, taking his or her rights and remedies, subject to any defenses that the obligor has against the assignor prior to notice of the assignment.' " (*Dagher v. Ford Motor Co.* (2015) 238 Cal.App.4th 905, 925 (*Dagher*).)

### b.  Assignability Is the Rule

The assignability of choses in action originated in the common law. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006)

9

38 Cal.4th 1252, 1259 (*Essex Ins.*).) In California, the right to assign a chose in action was codified in 1872 by section 954, which states: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." (See *Essex Ins.*, at p. 1259 [date of codification].) A "thing in action is a right to recover money or other personal property by a judicial proceeding." (§ 953.) Enactment of section 954 "had the effect of liberalizing restrictions on the types of actions that may be assigned to a third party" such that in general, "assignability is the rule." (*Essex Ins.,* at p. 1259.) Applying this rule, courts have consistently found rights of recovery founded in property or pecuniary interests assignable. (See, e.g., *Schaffter v. Creative Capital Leasing Group, LLC* (2008) 166 Cal.App.4th 745, 756 [breach of contract]; *Stapp v. Madera Canal & Irrigation Co.* (1917) 34 Cal.App. 41, 46–47 [damage to real property]; *Staley v. McClurken* (1939) 35 Cal.App.2d 622, 625 [conversion or damage to personal property]; *Estate of Baker* (1915) 170 Cal. 578, 587–588 [will contests]; *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1147 (*McLaughlin*) [fraud assignable when connected to property or something that has a legal existence and value independent of the right to sue for fraud].)

However, there are two categories of exceptions to the general rule of assignability. First, "highly personalized rights of recovery are not assignable." (*Dagher*, *supra*, 238 Cal.App.4th at p. 926.) Highly personalized causes of action typically involve "wrongs done to the person, the reputation or the feelings of an injured party." (*AMCO Ins. Co. v. All Solutions Ins. Agency, LLC* (2016) 244 Cal.App.4th 883, 892 (*AMCO*).) Second, legal malpractice claims are not assignable. (*Fireman's Fund Ins. Co.*

10

*v. McDonald, Hecht & Solberg* (1994) 30 Cal.App.4th 1373, 1383 (*Fireman's Fund*).)

### c.    Exception for Highly Personalized Rights of Recovery

As mentioned, tort causes of action for personal injury, emotional damage, or reputational damage are not assignable. (*AMCO*, *supra*, 244 Cal.App.4th at p. 892; *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 834 [Highly personal causes of action that may not be assigned include " ' "slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature." ' "].)  This first exception to assignability focuses on the personal nature of the damages sought by the assignee.

For example, in *Timed Out, LLC v. Youabian, Inc.* (2014) 229 Cal.App.4th 1001, two models assigned the plaintiff their rights to sue for misappropriation of their images after discovering their images were being used in advertisements for the defendants' cosmetic medical services.  The plaintiff filed a complaint against the defendants, alleging causes of action for common law and statutory misappropriation of likeness.  The defendants moved for judgment on the pleadings, arguing that the plaintiff did not have standing to sue on behalf of the models because the models' privacy rights were personal and could not be assigned.  (*Id.* at pp. 1004–1005.)  The trial court granted the defendants' motion and entered judgment in favor of the defendants.  (*Id.* at p. 1005.)  On appeal, the court concluded that a cause of action for misappropriation of likeness was assignable.  (*Id.* at pp. 1009–1010.)  Since the plaintiff sought to recover only *pecuniary damages* for the defendants' alleged commercial

11

misappropriation of the models' likenesses, the right of action was not personalized. (*Id.* at pp. 1010–1011.)

Likewise, the Supreme Court in *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942, concluded that a bad faith cause of action against an insurer was not assignable because it sought both assignable (the actual value of policy benefits) and nonassignable (emotional distress and punitive) damages. By contrast, in *Essex Ins.*, *supra*, 38 Cal.4th at pp. 1263–1264, the Supreme Court found a bad faith claim against an insurer assignable where the assignee plaintiff sought only the monetary value of the policy benefits wrongfully withheld by the insurer and did not seek "damages for emotional distress or punitive damages, or damages for injury to reputation or other personal interests."

### d.     *Exception for Legal Malpractice Claims*

The second well-established exception to assignability is for legal malpractice actions. "California courts have consistently held legal malpractice claims are nonassignable to protect the integrity of the uniquely personal and confidential attorney-client relationship." (*Fireman's Fund*, *supra*, 30 Cal.App.4th at p. 1383.) "[A]lthough choses in action for property or pecuniary losses are generally assignable, a claim for legal malpractice is more akin to those types of claims which are *not* assignable, i.e., claims for personal injury, wrongs of a purely personal nature (such as injuries to the reputation or feelings of the injured party) or breaches of contracts of a purely personal nature (such as promises of marriage). [Citation.] . . . [T]he attorney-client relationship (although containing contractual elements) is unique and involves a highly personal and confidential relationship, making the relationship '. . . more analogous to a contract of a

12

personal nature than to an ordinary commercial contract'
[citation], and rendering claims for negligent breach thereof
nonassignable." (*Kracht v. Perrin, Gartland & Doyle* (1990) 219
Cal.App.3d 1019, 1023 (*Kracht*); *Goodley v. Wank & Wank, Inc.*
(1976) 62 Cal.App.3d 389, 394 [same].)

Attorneys owe clients "a duty of undivided loyalty and
diligence in representing the client.  Such duty is personally owed
by the attorney and may not be delegated to others, and is owed
solely to the client, [the attorney's] one intended beneficiary.
Assignability would encourage commercialization of claims, and
would force attorneys to defend themselves against persons to
whom no duty was ever owed.  Moreover, the legal profession is
debased by such commercialization, because it could
(1) encourage unjustified lawsuits; (2) generate increased
malpractice lawsuits, burdening the profession, the court system
and (to the extent malpractice premiums would inevitably rise
and be passed to the consumers) the public; and (3) promote
champerty.  [Citation.]  Assignability could conceivably reduce
the public's access to legal services, since the ever present threat
of assignment by irresponsible clients (seeking quick financial
gain) could cause lawyers to evaluate more selectively the
desirability of representing a particular client." (*Kracht*, *supra*,
219 Cal.App.3d at pp. 1023–1024.)[5]

---

[5]     In *White Mountains Reinsurance Co. of America v. Borton
Petrini, LLP* (2013) 221 Cal.App.4th 890, 908–909, the Court of
Appeal recognized a narrow exception to the prohibition on
assignment of legal malpractice claims where the assignment
was part of a larger commercial transaction between insurance
companies and therefore the policy concerns related to an
assignment were not implicated.

**IV. A Claim for Breach of Fiduciary Duty Against Real Estate Brokers Seeking Damages Solely Related to Property and Pecuniary Interests Is Assignable**

Here, plaintiff sued defendants for breaching their fiduciary duty to Gottlieb by not disclosing the dual agency and not working to obtain the highest possible sale price. It is well established that a real estate broker owes a fiduciary duty to her client, which "requires the highest good faith and undivided service and loyalty." (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25.) "A fiduciary must tell its principal of all information it possesses that is material to the principal's interests. [Citations.] A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent." (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 762.) " ' "Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." [Citation.] [¶] "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud." ' " (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.)

Thus, plaintiff's action for breach of a fiduciary duty boils down to a claim for constructive fraud. We therefore address

14

whether this constructive fraud claim falls under either of the two exceptions to assignability.

### a. *Plaintiff's Claim Does Not Involve a Highly Personalized Right of Recovery*

Courts have consistently found that claims for fraud do not involve highly personalized rights of recovery where the fraud is connected to property or something that has a legal existence and value independent of the right to sue for fraud. (*McLaughlin*, *supra*, 23 Cal.App.4th at p. 1147 [claims regarding insurer's fraudulent behavior leading to breaches of duties to defend and to pay judgments against insureds in underlying investment fraud action were assignable]; *Osuna v. Albertson* (1982) 134 Cal.App.3d 71, 83–84 [fraud and negligent misrepresentation claims assignable when related to real property]; *Wikstrom v. Yolo Fliers Club* (1929) 206 Cal. 461, 464 [purchaser could assign his fraud cause of action that alleged a misrepresentation about the number of acres of real property being sold].)

Here, plaintiff's claim is closely tied to real property (the house) and a pecuniary interest in the proceeds from the house's sale. Plaintiff pled damages attributable only to the commission paid to defendants, the money spent preparing the home for sale, and the amount greater than the sale price that would have been paid had defendants not allegedly breached their fiduciary duty. Plaintiff therefore is not seeking personalized relief, e.g., damages for emotional distress, reputational damage, or physical injuries. On the spectrum of unassignable (highly personalized) and assignable (based in property and pecuniary rights) claims, this fraud claim lands solidly on the side of assignability.

Defendants contend "the alleged failure to disclose the dual agency was a personal, rather than pecuniary, loss." We

15

disagree.  Plaintiff did not seek categories of relief too personal to assign.  On the contrary, plaintiff's alleged losses are grounded in the money that allegedly should have been earned from the property's sale, not from violation of personalized rights.

Citing *Superbrace, Inc. v. Tidwell* (2004) 124 Cal.App.4th 388, 396 and *Manela v. Stone* (2021) 66 Cal.App.5th 90, 107–108, defendants contend that Gottlieb could not assign the cause of action because the brokers' contract imposed personal obligations.  *Manela*, at pages 107–108, makes the point that contractual duties of a personal nature are nondelegable, especially where " 'the personal quality of the party was a material inducement to the other party entering into the contract.' "  *Superbrace*, at page 396, similarly states, " 'the duties imposed upon one party may be of such a personal nature that their performance by someone else would in effect deprive the other party of that for which he bargained.  The duties in such a situation cannot be delegated.  [Citation.]  Rights likewise cannot be assigned if the assignment would materially impair the nonassigning party's chance of obtaining the performance he expected.' "

However, this case does not deal with the assignment of defendants' personal duties under the contract.  The contract itself has already been performed—there are no duties to assign.  The assignment here is related to Gottlieb's right to monetary damages for defendants' failure to disclose pertinent information in a sales transaction.  As explained above, such a chose in action is assignable.

16

### b. *The Real Estate Broker's Fiduciary Relationship Is Distinguishable from the Attorney-Client Relationship*

Defendants also contend that because real estate agents have a relationship of "trust and confidence" with the client and owe the client "the highest good faith and undivided service and loyalty," a claim for breach of fiduciary duty is too personal to be assignable. Defendants liken a broker's fiduciary duty to the attorney-client relationship, and assert that like malpractice claims, the breach of a fiduciary duty against a real estate broker is not assignable.

In *Troost v. Estate of DeBoer* (1984) 155 Cal.App.3d 289 (*Troost*), the Court of Appeal declined to expand the assignability exception for legal malpractice claims to insurance brokers. The court noted the special nature of legal services and concluded that the unique concerns associated with legal malpractice claims were not present in the case against the insurance broker. (*Id.* at p. 297) The court pointed out that unlike the attorney-client relationship, the "procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone." (*Ibid.*) In *AMCO*, *supra*, 244 Cal.App.4th at page 890, defendant insurance brokers similarly urged the appellate court "to treat causes of action against an insurance broker in the same manner as malpractice causes of action against an attorney and conclude the causes of action are not assignable." Citing *Troost*, the court likewise declined. Noting "the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship," the court concluded "those factors

17

were not present in the client-broker relationship before it." (*AMCO*, at p. 893.)

As in *Troost* and *AMCO*, there are significant differences here between the client relationships for attorneys and for real estate brokers. We conclude that such differences do not support excepting breach of fiduciary duty causes of action from assignment. Like with insurance brokers, the real estate broker's relationship to the client centers entirely around a transaction. The broker's fiduciary duty to the client is thus tied to property and pecuniary interests involved in the transaction. Moreover, the transaction benefits not only the real estate broker's selling client but also the broker, the buyer, and the buyer's agent. It is because of the transactional nature of the broker's service to the client that real estate brokers can act as dual agents. (*Horiike v. Coldwell Banker Residential Brokerage* Co. (2016) 1 Cal.5th 1024, 1030 [brokers can be dual agents after disclosure to the client and client's consent].)

In contrast, the attorney-client relationship goes beyond transactional support. The attorney-client relationship is built on legal counsel and advocacy, and often involves more sensitive, confidential matters like criminal defense, family law, or business litigation. The attorney's service is unattached to property, and wholly bound to the client. As a result, any right to recovery is extremely personal to that client.

Unlike real estate brokers, attorneys cannot act as dual agents representing both plaintiffs and defendants in the same lawsuit because of the personalized service they provide to their clients. (See Rules Prof. Conduct, rule 1.7 [lawyer prohibited from representing a client if there is a significant risk that lawyer's responsibilities to another client will materially limit the

lawyer's ability to represent the current client].) The personalized nature of the relationship is further evidenced by the fact that attorneys are held to a higher standard of confidentiality than real estate brokers, one that makes confidential attorney-client communications privileged. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 734 ["The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material."]; Evid. Code, § 954 [lawyer-client privilege]; see Bus. & Prof. Code, § 6068, subd. (e)(1) [attorneys must "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"].) No such privilege exists for brokers.

Because plaintiff's lawsuit does not seek personalized relief, assignment of the breach of the fiduciary duty cause of action does not raise the policy concerns associated with assignment of a legal malpractice cause of action. And, as this is seemingly the first instance where the assignability of a cause of action for breach of a real estate broker's fiduciary duty has been raised since section 954's codification in 1872, we do not have concerns that our ruling will encourage unjustified litigation, generate increased breach of fiduciary duty lawsuits, burden the real estate profession, or promote champerty. (See *Kracht*, *supra*, 219 Cal.App.3d at pp. 1023–1024 [stating policy reasons behind exception to assignment of legal malpractice claims].)

Based on the foregoing, we conclude that plaintiff's cause of action for breach of the real estate brokers' fiduciary duties, which seeks damages only related to property rights and pecuniary interests, is assignable. Plaintiff therefore has

19

standing to pursue this lawsuit based on the allegations in the complaint.

## DISPOSITION

The judgment is reversed. On remand, the trial court is to consider defendants' remaining grounds for summary judgment.[6] Plaintiff and appellant Laura Lazar is awarded her costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:


ADAMS, J.


BERSHON, J.*

---

[6]     We make no comment on the merits of the remaining grounds for summary judgment, which were not argued in the appellate briefs. We have refrained from reviewing them to give the trial court the first opportunity to evaluate the arguments and evidence.

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.