Opinion
FILES, P. J.
The issue presented is whether lawyer I who is sued by a former client for professional negligence may cross-complain for equitable indemnity against lawyer II who was retained to extricatethe client from the situation created by the alleged negligence of lawyer I. We have concluded that under the circumstances presented here the answer is negative.
This is an original proceeding for a writ of mandate or prohibition to compel the superior court to dismiss a cross-complaint. The decision here must be based upon the allegations of the pleadings, and for the purpose of discussion we must assume the truth of all of those allegations, which, of course, have not been and may never be proven.
In December 1972 Schlumberger Limited entered into a transaction with Union Bank (hereinafter Bank) whereby Schlumberger guaranteed repayment of Bank’s loan to Virtue Bros. Mfg. Co., Ltd., (VBM) which was then a wholly owned subsidiary of Schlumberger. VBM purportedly conveyed to Bank security interests in personal property. VBM subsequently defaulted and in 1975 Schlumberger paid off Bank pursuant to the guaranty and Bank assigned to Schlumberger the security interests which it had received from VBM.
When Schlumberger attempted to enforce the security interests, VBM filed a petition for reorganization under chapter XI of the Bankruptcy Act. In the bankruptcy proceedings other creditors of VBM challenged the validity of these security interests. Schlumberger retained the law *350 firms of Gibson, Dunn & Crutcher and Shutan & Trost (hereinafter collectively as Gibson) to assist it in enforcing its rights, and with the assistance of these lawyers Schlumberger settled its differences with the other creditors. This settlement, Schlumberger now alleges, netted about $1 million less than Schlumberger would have been entitled to receive if its security interests had been valid and enforced.
Schlumberger, through its attorneys Gibson, Dunn & Crutcher filed an action for damages against Union Bank and the law firm of Kindel & Anderson (Kindel), who had acted as legal counsel for Schlumberger in the 1972 loan transaction. The complaint alleges that Bank and Kindel, acting on behalf of Schlumberger in the loan transaction, were negligent in failing to provide complete, valid, perfected and enforceable security interests and failing to advise Schlumberger of the risk that the security interests would not be enforceable.
Bank’s answer to the complaint alleges as an affirmative defense that Schlumberger was contributively negligent in settling with the other creditors of VBM.
Bank and Kindel separately filed cross-complaints against Gibson, alleging that those law firms were negligent in their representation of Schlumberger in the bankruptcy proceedings, and that this negligence contributed to the loss which Schlumberger seeks to recover from the cross-complainants. Bank’s cross-complaint alleges that the terms of the settlement “were unreasonable and disproportionate to the risk involved,” and that the cross-defendants “were further negligent in failing to promptly petition the Bankruptcy Court to lift its stay on the foreclosure proceeding and to seek reformation of the trust deed, to which reformation Schlumberger was entitled. . . .”
Gibson demurred to Bank’s cross-complaint upon the ground that it failed to state a cause of action against them. The superior court’s order overruling that demurrer is the subject of the petition here.
Pursuant to an agreement among the parties Gibson has not yet responded to the cross-complaint of Kindel. Nevertheless, since that cross-complaint raises legal issues identical with those raised by the Bank, Kindel has been recognized as an additional real party in interest in this mandate proceeding.
*351 The theory of the cross-complaint is based upon principles of comparative negligence as applied to joint tortfeasors in American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].[1] That case arose out of the bodily injury sustained by a minor boy while participating in a motorcycle race. The minor sued the organizations who sponsored the race, charging that they had negligently designed and managed the race. One of the defendants sought leave of court to file a cross-complaint against the minor’s parents seeking indemnification upon the ground that the parents had negligently failed to supervise their son, but the trial court denied leave to file it. The Supreme Court disagreed, stating that the principle of comparative negligence which had been established in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] “applies equally to the allocation of responsibility between two or more negligent defendants”; and the court therefore held “that under the common law equitable indemnity doctrine a concurrent tortfeasor may obtain partial indemnity from co-tortfeasors on a comparative fault basis.” (20 Cal.3d at pp. 607, 608.)
As Bank and Kindel point out, their cross-complaints fit neatly into the rationale of American Motorcycle. They allege the negligence of Gibson was a cause of the loss which Schlumberger complains of in its action against Bank and Kindel; hence the latter, if legally responsible to Schlumberger for that loss, are entitled to at least partial indemnity from Gibson on a comparative fault basis.
We observe, however, that American Motorcycle differs factually from the present case in two respects, one of which appears to be material.
One difference is that American Motorcycle dealt with liability for a single indivisible injury—that is the bodily harm sustained by the minor plaintiff in a single occurrence. The present case involves successive acts, each of which had a discernible effect contributing to the ultimate loss. It is conceivable that in this situation the evidence might show that the *352 harm resulting from the acts of one party could be identified and measured apart from the harm caused by other parties. We do not think this factual difference should militate against comparative indemnification. In medical malpractice cases, prior to American Motorcycle, partial indemnification has been awarded in favor of the party who caused the first injury and against the physician whose subsequent negligence aggravated it. (Herrero v. Atkinson (1964) 227 Cal.App.2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; Niles v. City of San Rafael (1974) 42 Cal.App.3d 230 [116 Cal.Rptr. 733].) These cases support the availability of equitable indemnification, comparative or otherwise, as between parties who made separate contributions to the loss.
The other distinction, which we think important, is the effect the cross-complaint for indemnification may have upon the relationship between the injured party and the law firm (lawyer II) chosen by that party to extricate him from the condition created by the cross-complainant (who need not have been a lawyer, but who, for convenience, we call lawyer I).
The most conspicuous consequence of a cross-complaint against the plaintiff’s lawyer is to preclude that lawyer from trying the case on behalf of the plaintiff. Depriving a party of the lawyer of his choice, who is also the lawyer most familiar with the background of the case, is a serious matter, but we do not view it as controlling here. In Comden v. Superior Court (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971], the Supreme Court imposed a standard which severely impairs the availability of attorneys to litigate cases arising out of business matters in which they or their firms participated. The impact of Comden is to give secondary importance to the need of a party to be represented by the law firm he deems best qualified for that task.
The critical element is the effect upon the relationship between the injured party and lawyer II while they are trying to resolve the situation created by lawyer I.
One relevant statement of the problem appears in Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737],
That action arose out of the purchase of shares of stock. The purchasers sued the seller’s attorney, alleging that he had negligently advised his clients that, under Securities Exchange Commission regulations, this stock could be sold by them without adverse consequence to the holders. *353 The Supreme Court upheld a dismissal of the action upon the ground that the complaint failed to show that the defendant lawyer owed any duty to the plaintiffs, in that the advice given was not intended to be communicated to them, nor was it intended to benefit them. Of interest here is this language: “To make an attorney liable for negligent confidential advise not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm’s length would inject undesirable self-protective reservations into the attorney’s counselling role. The attorney’s preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal ‘would prevent him from devoting his entire energies to his client’s interests’ [citation]. The result would be both ‘an undue burden on the profession’ [citation] and a diminution in the quality of the legal services received by the client.” (Goodman v. Kennedy, supra, at p. 344.)
Bank and Kindel correctly point out that the present case is factually distinguishable from Goodman v. Kennedy. Goodman’s action was based upon an alleged duty of an attorney to a person not his client. The cross-complaints of Bank and Kindel are based upon the duty of Gibson to its own client, Schlumberger. Bank and Kindel concede that Gibson owed no duty to them. They ask only that Gibson contribute to any damages awarded to their client Schlumberger to the extent that it—Gibson—negligently harmed Schlumberger.
However, the reasoning of Goodman is not based entirely upon the absence of any duty owed by the attorney to the plaintiff. The language quoted above points out an important policy consideration. That is, to expose the attorney to actions for negligence brought by parties other than the client, “would inject undesirable self-protective reservations into the attorney’s counselling role” and tend to divert the attorney from single-minded devotion to his client’s interests.
The case factually analogous to ours is Held v. Arant (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422]. In that case Held had employed Arant (lawyer I) to draft an agreement with NovaTech, Inc. When litigation arose between the parties to the agreement, Held retained another law firm (lawyer II) to represent him; and under the guidance of lawyer II, Held paid Nova-Tech a substantial amount in settlement. Held sued lawyer I for negligence. Lawyer I filed a cross-complaint against lawyer II alleging that, by reason of the negligence of lawyer II, legally *354 defensible claims had been settled, and asking indemnification if lawyer I should' be found liable to the plaintiff. The trial court dismissed the cross-complaint and the Court of Appeal affirmed.
The appellate court decision in Held was subsequent to the Court of Appeal decision in American Motorcycle and prior to the Supreme Court decision. The Held court avoided any possible conflict with whatever might be decided in American Motorcycle by stating in a footnote: “Arant raises no issue of the effect of the doctrine of comparative negligence upon the case at bench. We treat that issue as waived.” (67 Cal.App.3d at 751, fn. 2.)
In ruling against the cross-complainant the Held court considered two possible theories of liability. The first was the contention of the cross-complainant, lawyer I, that a lawyer is liable for his negligence to anyone who is foreseeably damaged by it. The court disposed of this by citing the cases holding that the lawyer’s duty of care extends only to the intended beneficiaries of his action.
The second theory considered by the Held court was a suggested analogy with the cases holding that a party defendant who was liable for personal injuries sustained by the plaintiff was entitled to indemnification from the physician whose negligence had aggravated the injury. Those cases rested on the theory that the tortious act of the original wrongdoer was a proximate cause of all of the ensuing damage, including the subsequent negligent medical treatment; but that, with respect to the aggravation caused by the medical treatment, the physician was the active tortfeasor and the original tortfeasor’s negligence was passive or secondary. Because the original tortfeasor was only secondarily negligent, he was entitled to be indemnified by the physician for the identifiable damages which the latter inflicted. (See Niles v. City of San Rafael, supra, 42 Cal.App.3d 230, 238-239; Herrero v. Atkinson, supra, 227 Cal.App.2d 69, 75.)
That principle of indemnification among tortfeasors had existed long before comparative negligence had become the law of California.
The Held court summarized its holding thus: “. . . Because reasons of policy peculiar to the tripartite relationship of attorney-client-adversary override the principle of equitable indemnity enunciated in cases such as Herrero . . . and Niles ... we conclude that the first lawyer has no right of indemnity from the second.” (67 Cal.App.3d at p. 750.)
*355 Explaining the inapplicability of the medical malpractice cases the court said: “In the situation of successive acts of negligence by a tortfeasor and treating physician, the possibility that he may be sued by the original tortfeasor for indemnity in no way inhibits the performance of the professional duty by the physician. Whatever may be the effect of exposure to malpractice suits upon the performance of good medicine, it exists irrespective of the indemnity potential. Where, however, an attorney is retained to represent the interests of his client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel.” (67 Cal.App.3d at p. 752.)
Even though Held v. Arant did not raise comparative negligence issues, it did squarely decide that the preservation of the attorney-client privilege precluded a cross-action by lawyer I against lawyer II for equitable indemnification.
What was said in Held v. Arant is quite as applicable to indemnification under the comparative negligence standards. Since American Motorcycle has greatly expanded the opportunities for defendants in negligence cases to seek indemnification from parties whom the plaintiff did not choose to sue, the hazard to the attorney-client relationship could now be vastly greater than it was under the substantive law previously in effect.
Bank and Kindel argue that permitting their cross-complaint will not impinge upon a lawyer’s duty to his client because the cross-complaints do not involve any expansion of the lawyer’s duty. They argue that they are doing nothing more than seeking to protect and enforce the lawyer’s duty to his client. In short, if lawyer II fully performs his duty to his client, he need fear no cross-complaint for comparative indemnification.
This argument misses the vice of the lawyer I versus lawyer II cross-complaint. The problem is not that lawyer II may be found liable to his client for malpractice. It is that in satisfying the needs and desires of his client, lawyer II may be exposing himself to the not insubstantial cost of defending an action by his client’s opponent.
The parties have mooted the question whether in a factual setting of the kind presented here lawyer II would or would not be motivated to litigate rather than settle his client’s claim in order to minimize his *356 exposure to a cross-complaint. We think the problem is more complex than that.
A client seeking to extricate himself from a situation caused by the negligence of lawyer I may find his options limited both by legal constraints and practical considerations. The client’s perception of his own best interests, after obtaining sound legal advice, may dictate a course which lawyer I may fairly characterize as “unreasonable and disproportionate to the risk involved.” What effect a settlement so motivated would have on the client’s claim against lawyer I is not before us. What is pertinent here is the effect upon the relationship between lawyer II and the client when the client’s alternatives are under consideration. Lawyer II should not be required to face a potential conflict between the course which is in his client’s best interest and the course which would minimize his exposure to the cross-complaint of lawyer I.
In the language of the Held court, “the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel.” (67 Cal.App.3d at p. 752.)
Counsel for Kindel have argued that a suit for malpractice is one of the risks of professional life and should not be regarded as a serious inhibition upon professional loyalty and objectivity. With respect to malpractice claims of dissatisfied clients, that philosophy may be appropriate. But the effect is different if the attorney is exposed to negligence claims by parties who are his client’s adversaries. The teaching of such cases as Goodman v. Kennedy, supra, 18 Cal.3d 335 and Held v. Arant, supra, 61 Cal.App.3d 748, is that exposure to the client’s potential adversaries “ ‘would prevent him from devoting his entire energies to his client’s interests.’ ” (18 Cal.3d at p. 344.)
Let a writ of mandate issue requiring the respondent court to vacate its order overruling the demurrers of Gibson, Dunn & Crutcher and Shutan & Trost to the cross-complaint of the Union Bank and make a new order sustaining those demurrers without leave to amend.
Kingsley, J., concurred.

In Commercial Standard Title Co., Inc. v. Superior Court, 92 Cal.App.3d 934 [155 Cal.Rptr. 393] (decided May 11, 1979, Fourth Dist., Div. One) a customer of two title insurance companies sued the companies for negligently preparing a report. The title companies sought to cross-complain against its customer’s attorney for indemnification, charging the latter with negligence in advising his client to rely upon the report. A majority of the court held that the American Motorcycle rationale did not apply, and upheld an order sustaining a demurrer to the cross-complaint. Since that decision is not yet final, we do not rely upon it. (See rules 24(a), 28(a), Cal. Rules of Court.)