106 F.3d 442
 323 U.S.App.D.C. 173
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Peter G. ANGELOS, et. al., Third-Party Plaintiff-Appellants,
v.
Henry M. LLOYD, et. al., dba Berliner, Corcoran & Rowe,
Third-Party Defendant-Appellees.
 No. 96-7075.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 27, 1996.
 
 Before WILLIAMS, GINSBURG and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record before the United States District Court for the District of Columbia, and on the briefs of counsel and oral argument before this court. The issues have been accorded full consideration by this court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by this court that the judgment of the district court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a).
 
 MEMORANDUM
 
 4
 This case involves two sets of lawyers who represented Earle Lewis in connection with his claim for asbestos injuries. The first, appellants, "the Angelos firm," represented Lewis up to and throughout most of the asbestos trial. Near the end of this trial, Lewis consulted the second firm, appellees, "the Berliner firm," about the possibility of a malpractice claim against the Angelos firm for failure to file suit prior to the statute of limitations deadline. Based upon this consultation, Lewis notified the court that he might need to retain other counsel to obtain relief for errors committed by the Angelos firm. The Angelos firm then moved to withdraw from the case based upon a conflict of interest, which the court granted. On the advice of the Berliner firm, Lewis requested that the court not grant a mistrial, and the court agreed. Thereafter, Lewis proceeded to complete the trial pro se. The jury returned a verdict in his favor for $2.4 million in damages. After considering the jury's response to a factual interrogatory, however, the court set the verdict aside on the grounds that plaintiff had failed to file suit within the statute of limitations.
 
 
 5
 Lewis (represented by the Berliner firm) later filed a legal malpractice suit against the Angelos firm for failure to file the asbestos claim in a timely manner. The Angelos firm then filed a third-party complaint against the Berliner firm for contribution. This complaint alleged that the Berliner firm had engaged in professional negligence that caused or contributed to Lewis's damages. The claim was premised on the idea that but for the negligence of the Berliner firm, the Angelos firm would have remained counsel for Lewis, would have completed the trial, and would have successfully argued around the apparent statute of limitations problem, which Lewis failed to do. The district court dismissed this complaint on the ground that District of Columbia law, expressed in Waldman v. Levine, 544 A.2d 683, 692 (D.C.App.1988), did not allow an action for contribution against a client's successor lawyer, where his predecessor, sued by the client for malpractice, claims that malpractice by the successor caused or aggravated the injury for which the first is being sued. Lewis's claim against the Angelos firm was settled, and this appeal of the third-party claim was taken.
 
 
 6
 According to Waldman, allowing a third-party complaint would impair "[s]uccessor counsel's ability to choose the best course for the client [without] fears of liability for contribution or indemnity," because the attorney might be "swayed from making the decision that the attorney thinks is in the client's best interest because another course of action will better serve the attorney's own interest in avoiding a third-party complaint." Id. at 694.
 
 
 7
 Appellants suggest a number of theories on which to distinguish Waldman. First they say that the Berliner firm did not serve as a "successor" firm, but rather advised Lewis while he was still a client of the Angelos firm. But we see no reason to give such a literal meaning to the term "successor," particularly in light of the facts in Waldman. There, the allegations against the second attorney involved events that took place while the first attorneys remained the plaintiff's counsel of record. 544 A.2d at 693. Moreover, appellants do not explain why Waldman 's conflict-of-interest theory would be any less applicable where there is a period of overlap between counsel.
 
 
 8
 Appellants also argue that Waldman applies only to indemnity, not contribution. They rest this on language in Waldman referring to "[t]he policy reasons for refusing to apply the normal rules of indemnity...." 544 A.2d at 694. Waldman makes no meaningful distinction between the two, however, and in fact refers to contribution several times, seemingly interchangeably with indemnity. See, e.g., id. (counsel "should not be influenced by fears of liability for contribution or indemnity."). In addition, although Waldman uses the term "indemnity" at times, it is not clear that a duty to indemnify, which normally arises out of some contractual relationship, correctly characterizes the principle under which a successor attorney would be obliged (in other jurisdictions) to reimburse the prior lawyer for causing or exacerbating an injury to the shared client. Moreover, appellants again offer no reason why Waldman 's conflict-of-interest theory would be less applicable to contribution than to indemnity.
 
 
 9
 In a related argument, appellants distinguish Waldman as a case involving a distinct injury caused by the second attorneys, rather than the exacerbation of an existing injury. It is true that the Waldman court appeared to find no common injury, thus rendering contribution inappropriate under conventional principles. Id. at 693. But the court then proceeded to state its conflict-of-interest theory, evidently as an alternative holding. See id. at 684-85 (explicitly stating that the court "hold [s]" that the normal rules under which a successor, independent tortfeasor, may be liable to a prior tortfeasor, rules that presuppose the existence of a common injury, are incompatible with the attorney-client relationship) (emphasis added).
 
 
 10
 Finally, appellants suggest that their case is distinguishable from Waldman because the Berliner firm had no "choice" as to the proper course of action, and thus its decisionmaking was not based on an attorney's discretion. Although Waldman left open the question of its applicability to situations where "successor counsel does not face a choice among alternative courses of action," id. at 693 n. 8, citing Parker v. Morton, 117 Cal.App.3d 751, 763, 173 Cal.Rptr. 197, 204 (1981), we do not see how such a distinction might coherently be applied. As another California intermediate appellate court said, "Any choice of a remedy, however obvious, involves some degree of exercise of professional judgment." Lewis v. Purvin, 208 Cal.App.3d 1208, 1216 n. 3, 256 Cal.Rptr. 827, 832 n. 3 (1989). And even if we could find a "choice-less" scenario, it would not be this case, which involved decisions requiring judgment, e.g., whether to request a mistrial.
 
 
 11
 Accordingly, we can find no principled basis on which to distinguish Waldman.
 
 
 12
 Although the Waldman court expressly identified the doctrine as a holding, 544 A.2d at 684-85, the court also appeared to find that there the successor attorney simply had no responsibility at all for the injury suffered by the client. See id. at 693, 694. As we are to use all the data that the highest court of the jurisdiction would use in determining how the highest court would decide, Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 851 (2d Cir.1967), the apparent holding in Waldman, despite whatever frailties may inhere in its status as an alternative route to judgment, makes it more probable than not that the court would adhere to Waldman. However, to the extent that this feature of the case may indicate that the Waldman principle is unsettled in the District, it does not appear out of place for us to express our doubt that the rule is necessary or appropriate to encourage attorneys to act in the best interest of their clients. So far as appears the rule leaves the client entirely free to sue the second lawyer for malpractice, so that that lawyer necessarily remains subject to whatever incentives exposure to malpractice liability ordinarily entails. That exposure would seem to be the overwhelmingly predominant source of incentives, as the duty to contribute is essentially derivative and in fact seems to have solely distributional effects. See William M. Landes and Richard A. Posner, "Joint and Multiple Tortfeasors: An Economic Analysis," 9 J.Leg.Stud. 517, 529 (1980). Moreover, the incentives generated by liability to the client are presumably regarded as sound; the incentive to maximize the benefits for the client would engender loyal and competent service, which in turn would minimize the lawyer's own exposure to malpractice liability. We note that the intermediate appellate judiciary in California appear split on the issue. Compare Parker v. Morton, 117 Cal.App.3d 751, 759 n. 2, 173 Cal.Rptr. 197, 201 n. 2 (1981) ("we cannot understand [why] an attorney would be more likely than a physician to be influenced in giving advice by the prospect of being sued for proportional indemnity for his negligent conduct") with Gibson, Dunn & Crutcher v. Superior Court, 94 Cal.App.3d 347, 356, 156 Cal.Rptr. 326, 331 (1979) ("Lawyer II should not be required to face a potential conflict between the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer I"); see also, id., 94 Cal.App.3d at 360; 156 Cal.Rptr. at 334 (Jefferson, J., dissenting) (rejecting "unexamined and unpersuasive hypothesis ... that ... an attorney's liability to third parties for negligence ... will inhibit an attorney's best representation of his client even in a situation where there is no conflict between the interest of the client and the third party" particularly in light of "very same duty owed ... to his client"). In addition, other jurisdictions have permitted similar third-party complaints against successor attorneys. See, e.g., Maddocks v. Ricker, 531 N.E.2d 583 (Mass.1988) (permitting contribution, although acknowledging contrary position); Schauer v. Joyce, 444 N.Y.S.2d 564, 429 N.E.2d 83 (1981) (permitting contribution without discussion of policy considerations); Hansen v. Brognano, 137 A.D.2d 880, 524 N.Y.S.2d 862 (1988) (stating right of attorney to file third-party complaint against subsequent attorney for contribution). These issues, however, are for the courts of the District of Columbia, not us.
 
 
 13
 For these reasons, we affirm the judgment of the district court.